[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTIONS FOR SUMMARY JUDGMENT
Plaintiff brings this action to foreclose a commercial mortgage on real property of John Fitch Court Associates Limited Partnership (Fitch Associates).
The defendant Carr Property Management, Inc. (CPM) claims to be a tenant in the real property and was joined as a defendant herein in June 1995.
The defendants have filed a counterclaim.
Plaintiff moves for summary judgment on its complaint and on defendants' counterclaim as to issues of liability.
The court must search the affidavits for relevant facts that present a genuine issue.
Facts from Affidavits
CHFA is a body politic and corporate of the State of Connecticut. It is a public instrumentally and political subdivision of the State, and the exercise of its powers is "deemed and held to be the performance of an essential public and governmental function." Fitch Associates is the record owner of all right, title and leasehold interest in a 40-unit, federally subsidized housing project for the elderly located in Windsor, Connecticut, (the Property). Christopher M. Carr (Carr) was the managing general partner of Fitch Associates during all relevant periods. CPM was Fitch Associates' managing agent of the Property prior to August 1993. It now claims to be a tenant in the Property. Carr was president and "controlling shareholder" of CPM during all relevant periods.
By its Note dated January 22, 1988, Fitch Associates promised to pay to the order of CHFA the principal sum of $1,985,600.00 with interest. To secure the Note, Fitch Associates gave CHFA a mortgage dated January 22, 1988. As an express condition to and in consideration of the mortgage loan, Fitch Associates also gave CHFA a Declaration and Agreement of Restrictive Covenants dated January 22, 1988 in which it consented
to be regulated and restricted by [CHFA] in the CT Page 3575 management and operation of [the Property] as . . . provided by the Mortgage Loan documents, [the Connecticut Housing Authority Act, Conn. Gen. Stat. ch. 134] and any rules, regulations, policies and procedures of the authority promulgated thereunder.
In addition as security for the Note, Fitch Associates executed a Collateral Assignment of Leases and Rentals and Assignment of Proceeds; a Building Loan Agreement and; a Covenant of Compliance and Regulatory Agreement, all dated January 22, 1988. On November 29, 1990 Fitch Associates and CHFA entered into a modification agreement of the Note and Mortgage increasing the debt to $2,531,000.00.
As of February 29, 1993, Fitch Associates had failed
 to pay part of the installment of principal and interest due February 1, 1993 amounting to $14,891.83; and
 to pay the total installments of principal and interest due for the months of March, April and May, 1993, including late charges assessed thereon, amounting to $61,528.74;
In addition Fitch Associates had failed to pay
 (a) prorated monthly hazard insurance escrow installment for May, 1993, amounting to $1,043.00;
 (b) prorated monthly replacement reserve deposit amounting to $2,121.32, as required by the Note and Mortgage;
Fitch Associates also failed
 to remove all liens filed against the property (more particular a receivership in favor of CLP and liens for unpaid water charges in favor of the MDC);
 to properly and fully account to CHFA in regard to tenant security deposits;
 to promptly report to CHFA the receipt of a notice of non-compliance with local ordinances, codes, laws or regulations;
CT Page 3576
 to preserve and maintain the property in good condition and repair (more particularly a leaking roof and deteriorated sidewalks);
 to disclose information regarding the current insolvency of the partnership;
 to install storm windows on the property in accordance with CHFA approved Management Plan and local codes all as required by the Note and Mortgage.
By letter of February 24, 1993 CHFA exercised its option to declare the entire balance on the Note due and payable and advised Fitch Associates that it had ten (10) days from the date thereof in which to provide an acceptable cure or CHFA would proceed with all its available legal remedies.
In response to CHFA's February 24, 1993 letter, on March 8, 1993 Fitch Associates claimed that the 30-day grace period for the monetary defaults did not expire under the terms of the Note and Mortgage until March 2, 1993. CHFA then gave Fitch Associates the full benefit of this grace period and opportunity to cure any defaults by sending a letter dated March 11, 1993, which stated, inter alia:
 The monetary defaults (the February 1st installment and escrows) are currently still unpaid and the 30-day grace period has expired. As for the non-monetary defaults, which have now existed for a period of not less than 30-days, you have until March 25, 1993 to effect cure of those items. If the February payments are immediately delivered to CHFA, we will decelerate this loan to afford you until March 25, 1993 to offer an acceptable cure to CHFA. If, however, the February payments are not made in good funds by the close of business Monday, March 15, 1993, CHFA hereby reaffirms its acceleration of this loan effective March 2, 1993.
Fitch Associates never paid the amounts then due nor all subsequent installments of principal and interest.
CHFA commenced this foreclosure action on or about May 19, 1993. Amounts due and owing to CHFA under the Note, Mortgage and CT Page 3577 Regulatory Agreement as of January 7, 1997, are as follows:
Balance of Principal $2,420,714.54
 Interest @ 8.75% (03/01/94 — 12/31/96 $ 589,837.722
Late Charges $ 25, 975.62[1]
Unpaid Hazard Insurance Escrow $ 0.00
 Unpaid Reserve for Replacements Escrow (04/01/94 — 01/01/97) $ 18,031.22 ------------------
 TOTAL $ 3,054,559.10 ------------------
Interest is accruing thereon at the rate of $580.31 per day.
On or about July 23, 1993, CHFA and Fitch Associates entered into a Lockbox Agreement (under the counsel and advise of Howard Seigel, Esq.) whereby all rents and other monies received from the Property were to be paid into a lockbox account established and maintained by and for the benefit of CHFA. Paragraph No. 1 of the Lockbox Agreement states as follows:
 [Fitch Associates] hereby confirms that it is in default under the mortgage and that pursuant thereto its license under the Mortgage to collect all rents and other funds from whatever source from the [Property] was revoked as of the dates hereof.
As recited in the Lockbox Agreement, arrearages under the Mortgage amounted to $80,733.24 as of June 16, 1993.
During his deposition on March 8, 1994 and June 21, 1994, Carr testified that Fitch Associates was, in fact, in default under the Note and Mortgage because it —
 (1) failed to make payments of principal or interest due under the Note and Mortgage for the months of February, March, April and May, 1993;
(2) failed to remove liens filed against the Property CT Page 3578 by the Connecticut Light Power Company and the Metropolitan District Commission;
 (3) failed to remit to CHFA as of February 24, 1993 the prorated monthly hazard insurance escrow installment amounting to $510.00;
 (4) failed to remit to CHFA as of February 24, 1993 the prorated monthly replacement reserve deposit amounting to $530.33;
 (5) failed to submit an annual financial statement for 1992 to CHFA within 60 days of the end of the year;
 (6) had arrearages in its payments to a "vast majority" of its vendors and "[p]erhaps every vendor [it does] business with";
 (7) was in default under provisions of its limited partnership agreement relating to operating deficit guarantees to its limited partners; and
 (8) had stopped receiving capital contributions to the Property from its limited partners as the result of
 (i) Fitch Associates' cash flow problems and (ii) a lawsuit commenced by the tenants against Fitch Associates for its failure to install storm windows at the Property.
When the complaint was amended to add CPM no additional issue of fact dealt with CHFA's foreclosure action against Fitch Associates. Fitch Associates and CPM jointly filed their Answer, Special Defense and Counterclaim on September 11, 1995 in the language identical to the Fitch Court's original Special Defense and Counterclaim.
On January 22, 1988 Fitch Associates and CPM entered into a certain Management Agreement pursuant to which CPM agreed to act as Fitch Associates' exclusive agent for the management of the Property. On March 17, 1995 CPM was removed as said exclusive agent.
Pursuant to the Management Agreement, CPM was to be paid a CT Page 3579 fee.
Fitch Associates and CPM entered into the Management Agreement pursuant to CHFA's guidelines and at CHFA's request. In order that Fitch Associates obtain financing from CHFA, CPM had to execute the Management Agreement.
The Management Agreement is standard CHFA Form and it specifically incorporates the terms of and refers to the Note and Mortgage. In accordance with CHFA requirements, CHFA approved the appointment of CPM as the agent on January 22, 1988.
CONCLUSIONS RE COMPLAINT
There is no relevant and material evidence to contradict the plaintiff's factual statement in regard to the failure of Fitch associates to pay the February, March, April and May installments due on the Note and Mortgage before this suit was begun on May 21, 1993. The February, March and April payments were then due and owing and the Note and Mortgage were in default.
CONCLUSIONS RE COUNTERCLAIMS
A. ACCELERATION
Defendants have offered no relevant and material evidence for their claims. Fitch Associates received a proper notice of acceleration on March 11, 1993 in regard to its failure to pay the February 1993 installment, if such notice were necessary. The institution of the foreclosure action constitutes a valid exercise of a mortgagee's acceleration right. Hartford FederalSavings Loan Assn. v. Tucker, 196 Conn. 172, 180.
B. "MULDOON THREAT"
Defendants offer no evidence that the joinder of Messrs. King and Scherer in the "Muldoon" case was the sole cause of the CHFA decision to foreclose.
C. NON-MONETARY DEFAULTS
It is clear that several of the non-monetary defaults were in effect by March 11, 1993 and before. Plaintiff does not have to win on each item of claimed default; one will do. CT Page 3580
There is no relevant and material evidence that CHFA violated our CUTPA statute. CGS § 42-110g.
THIRD PARTY
CPM maintains that it is a third party beneficiary of the Note and Mortgage. CPM points to the Management Agreement of January 1, 1998 between its predecessor in name and Fitch Associates to prove its third party beneficiary status.
The test as to whether a party is a third party beneficiary of a contract between two other entities is whether those two entities intended to create a direct obligation from one of the parties to that contract to the alleged third party. Knapp v. NewHaven Road Construction Co, 150 Conn. 321, 325.
Normally questions of intent are not susceptible to decision on summary judgment. However, what we seek here is not the intent that existed in the minds of those two parties but rather the intent expressed in the written contract itself. Gateway co. v.DiNoia, 232 Conn. 223, 231-232.
The defendant Carr cites this court's decision in State v.McGriff, Super. Ct. JD Hartford-New Britain 349847S for the law that whether a person is a third party beneficiary depends entirely on the intent of the two parties to the contract. In addition Carr argues that questions "of motive, intent and subjective feeling" are to be left to the trier. That is true but Carr's submissions never raise that issue to one of material fact. That material must contain a factual basis for its claim.Aetna Casualty Surety Co. v. Murphy, 206 Conn. 409, 420-21. "[A]n adverse party, by affidavit or as otherwise provided by [Practice Book] § 380, must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, summary judgment shall be entered against him." Farrellv. Farrell, 182 Conn. 34, 38. "Moreover, mere conclusions are insufficient . . . " Id. 39.
In the defendants' submission the only paragraph of the offered evidence which might create a doubt is 43 of the Carr Affidavit which states: "As a result of the foregoing, it was the intent of the parties on January 22, 1988 when all of the foregoing agreements were entered into, that CHFA would owe a direct obligation to CPM." CT Page 3581
Carr never says it was his intent. Carr never points out what that direct obligation was to be. Carr never points at any fact in his submission of documents A thru I which would lead any reasonable human being to believe that the intent of both Fitch Associates and CPM was that somehow CHFA would owe CPM anything.
In addition, section 32 of Carr's Exhibit I (Management Agreement) provides:
 32. Subordination of Management Agreement. Owner and Agent each acknowledge that this Management Agreement is subject and subordinate to the Regulatory Agreement and to the Tenant Selection and Rental Plan and that to the extent this Management Agreement conflict with any of the provisions or requirements set forth in the Regulatory Agreement or the aforesaid exhibits thereto and to the Tenant Selection and Rental Plan, said Regulatory Agreement, and Tenant Selection and Rental Plan and exhibits shall prevail and control.
Carr does not offer either the Regulatory Agreement or the Tenant Selection and Rental Plan, both of which "prevail and control" over the Management Agreement in case of any conflicts.
Plaintiff's motion for summary judgment on its complaint and on CPM's counterclaim is granted.
N. O'Neill, J.